UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60865-CIV-SMITH

1901 HOLDING, LLC,

    Plaintiff,

v.

SCOTTSDALE INSURANCE COMPANY,

    Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Plaintiff's Motion for Summary Judgment [DE 33], Defendant's Response in Opposition [DE 41], and Plaintiff's Reply [DE 42]. Also before the Court are Defendant's Motion for Summary Judgment [DE 35], Plaintiff's Response in Opposition [DE 37], and Defendant's Reply [DE 38]. For the reasons that follow, Defendant's Motion for Summary Judgment is GRANTED, and Plaintiff's Motion for Summary Judgment is DENIED.

**I.    BACKGROUND[1]**

This case involves a request for declaratory relief pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, to determine the rights of the parties under a commercial property insurance policy issued by Defendant. Plaintiff owns an apartment complex located at 1901 Johnson Street, Hollywood, Florida 33020 (the "Property"). Defendant issued an insurance policy to Plaintiff, bearing Policy Number CPS3228811, for the Property, with dates of coverage from

---

[1] The Court omits record citations to facts the parties have not disputed.

July 31, 2019 through July 31, 2020 (the "Policy").  (DE 34-1.)  The Policy contains the following relevant provisions:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM

\* \* \*

A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

\* \* \*

3. Covered Causes of Loss
See applicable Causes Of Loss form shown in the Declarations.

(DE 34-1 at 57, 59.)

CAUSES OF LOSS – SPECIAL FORM

\* \* \*

A. Covered Causes of Loss
When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

B. Exclusions
1**. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to that loss.**

\* \* \*

g. Water
(1) Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);
(2) Mudslide or mudflow;
(3) **Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment**;
(4) Water under the ground surface pressing on, or flowing or seeping through:

     (a)  Foundations, walls, floors or paved surfaces;
     (b) Basements, whether paved or not; or
     (c) Doors, windows or other openings; or
  (5)  **Waterborne material carried or otherwise moved by any of the water referred to in Paragraph** (1), **(3),** or (4), or material carried or otherwise moved by mudslide or mudflow.

*   *   *

G.  Definitions

2.  "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow; ice or sleet; **water damage**.

*   *   *

c.  Water damage means:

*   *   *

  (2) **Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe caused by wear and tear, when the pipe is located off the described premises** and is connected to or is part of a potable water supply system or sanitary sewer system operated by a public or private utility service provider pursuant to authority granted by the state or governmental subdivision where the described premises are located.

**But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion.**

*   *   *

**To the extent that accidental discharge or leakage of water falls within the criteria set forth in c.(1) or c.(2) of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground**.

(DE 34-1 at 85 – 87, 94 (emphasis added).)

SEWER OR DRAIN DEFINITION ENDORSEMENT – FLORIDA

This insurance modifies insurance provided under the following:

CAUSES OF LOSS – BASIC FORM
CAUSES OF LOSS – BROAD FORM
CAUSES OF LOSS – SPECIAL FORM

> Under Section B. Exclusions, paragraph g. Water, subsection (3) the following is added:
>
> For the purpose of this exclusions, "sewer" and "drain" are defined as: (1) "Sewer" means any underground pipe, channel or conduit for carrying water, wastewater or sewage on or away from the premises described in the Declarations; (2) "Drain" means any pipe, channel or conduit for carrying water, wastewater or sewage on or away from the premises described in the Declarations to a "sewer."

(DE 34-1 at 98.)

On or about December 29, 2019, six units within the Property sustained water damage. (DE 27-2, 36-1 at 3.) On January 2, 2020, a plumber from Roto Rooter Plumbing & Drain Services inspected the Property and subsequently issued a report. (DE 36-1.) The report indicates that toilets on the first floor of the apartment complex had overflowed because of a "compromised cast iron pipe underground." (*Id.* at 3.) The plumber determined that a break in the pipeline was located under the public street, not on the Property, and opined that the City of Hollywood likely caused the break because the break was located under a recent asphalt patch. (*Id.* at 2.) On January 6, 2020, a public adjuster reported a claim to Defendants, claim number 01936143, for the water damage to the Property. (DE 34-2 at 16:15-17; 19:14-20:11.) On January 15, 2020, an inspector, on behalf of Defendant, inspected the Property and confirmed water damage in the six units. (DE 34-2 at 22:1-16; 24:16-15; 25:8-10; 25:24-26:9.) On February 17, 2020, Defendant denied Plaintiff's claim. (DE 27-2.) In the letter denying coverage, Defendant stated that the "adjuster's inspection confirmed the cause of loss was an underground cast iron sewer pipe that failed and caused water to overflow, which resulted in water damage" to the Property. (DE 27-2 at 1.) On

March 25, 2020, Plaintiff filed its Complaint against Defendant in the Seventeenth Judicial Circuit in and for Broward County, Florida. (DE 1-2 at 3.) Defendant removed the case to federal court on April 28, 2020. (DE 1.) Thereafter, on November 11, 2020, Plaintiff filed its Third Amended Complaint [DE 27], which seeks a declaratory judgment to determine the rights of the parties under the Policy.[2]

## II. STANDARD

### A. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247 (1986); *HCA Health Servs. of GA., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). The Court must view the record and all factual inferences therefrom in the light most favorable to the

---

[2] Specifically, Plaintiff seeks a declaratory judgment finding that: (a) the Policy issued by Defendant is valid and enforceable; (b) pursuant to the terms and conditions of the Policy, Plaintiff holds a valid and enforceable right to property insurance coverage for damages arising from a loss on or about December 29, 2019; (c) Exclusion B.1.g.(3) of Causes of Loss - Special Form (CP 10 30 09 17), "water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment" is ambiguous; (d) Exclusion B.1.g.(5) of Causes of Loss – Special Form (CP 10 30 09 17), "Waterborne material carried or otherwise moved by any of the water referred to in Paragraph (1), (3), or (4), or material carried or otherwise moved by mudslide or mudflow" is ambiguous; (e) under Causes of Loss – Special Form (CP 10 30 09 17) Exclusion B.1g.(3) and Exclusion B.1.g(5) directly conflict and/or are contradictory to the coverage afforded pursuant to Exclusion B.2.d for resulting "specified cause of loss" pursuant to Policy provision G.2.c.(1) and/or G.2.c.(2); (f) Exclusion B.1.g.(3) and B.1.g(5) of Causes of Loss - Special Form (CP 10 30 09 17) do not apply to the loss; (g) Plaintiff is entitled to coverage for damages resulting in a "specified cause of loss" pursuant to Exclusion B.2.d(1) of Cause of Loss – Special Form (CP 10 30 09 17); (h) the "resulting" loss is a "specified cause of loss" as defined under Policy provision G.2.c.(1) and/or (2) Causes of Loss – Special Form (CP 10 30 09 17); (i) Plaintiff is entitled to coverage for ensuing loss damages that were denied by Defendant; and (j) Plaintiff is entitled to property insurance coverage for the damages arising from an event that occurred on or about December 29, 2019.

non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 251-52)). In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson,* 477 U.S. at 252*; see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

      **B.**      **Florida Contract Law**

This case was removed from state court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. Therefore, the Court applies the substantive law of Florida as the forum state. *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC,* 601 F.3d 1143, 1148 (11th Cir. 2010). Under Florida law, interpretation of an insurance contract is a matter of law to be decided by the court. *Mama Jo's, Inc. v. Sparta Ins. Co.,* 823 F. App'x 868, 878 (11th Cir. 2020). In determining coverage under an insurance policy, courts look at the policy in its entirety and are required to give "every provision its full meaning and operative effect." *State Farm Fire & Cas. Co. v. Steinberg,* 393 F.3d 1226, 1230 (11th Cir. 2004). Florida law requires that the plain and unambiguous language of the policy controls. *See Swires Pac. Holdings, Inc. v. Zurich Ins. Co.,* 845 So. 2d 161, 165 (Fla. 2003). Only if the language is susceptible to more than one reasonable interpretation, "one providing coverage and the other limiting coverage," will the court resolve the ambiguity, construing the policy to provide coverage. *Interline Brands, Inc. v. Chartis Specialty Ins., Co.* 749

F.3d 962, 965 (11th Cir. 2014) (quoting *Taurus Holdings*, *Ins. v. U.S. Fidelity & Guar. Co.,* 913 So. 2d 528, 532 (Fla. 2005)).

However, interpreting the contract language is necessary, and the act of interpreting does not impute ambiguity to its terms. *Id.* A party claiming coverage generally bears the burden of proof to establish that coverage exists. *Mama Jo's,* 823 F. App'x at 879 (citing *U.S. Liab. Ins. Co. v. Bove,* 347 So. 2d 678, 680 (Fla. 3d DCA 1977)). "[A]n 'all-risk' policy is not an 'all loss' policy, and thus does not extend coverage for every conceivable loss." *Id.* (quoting *Sebo v. Am. Home Assurance Co.,* 208 So. 3d 694, 696-97 (Fla. 2016)). "[I]nsurance coverage must be construed broadly and its exclusions narrowly." *Evanston Ins. Co. v. Budget Grp. Inc.,* 199 F. App'x 867, 868 (11th Cir. 2006). Policies "are to be construed most strongly against the insurer and liberally in favor of the insured." *Id.* (citing *Harnett v. Southern Ins. Co.*, 181 So. 2d 524, 528 (Fla. 1965)). Accordingly, exclusionary clauses restricting the insured's coverage are generally disfavored. *Hartford Acc. & Indem. Co. v. Beaver,* 466 F.3d 1289, 1296 (11th Cir. 2006).

**III.   DISCUSSION**

The record is clear in that the Property sustained damage because a broken or compromised cast iron pipe located under the public street, not on the Property, caused water or waterborne material to discharge from toilets located on the first floor of the Property. The dispute between the parties is simply whether the language of the Policy provides coverage under this situation for the damage to the Property. Plaintiff argues that it is entitled to summary judgment because, under the Policy, Paragraph G.2.c(2) provides coverage for its claim. In the alternative, Plaintiff argues that Paragraphs B.1.g.(3), (5) and G.2.c(2) are ambiguous and susceptable to multiple interpretations. In contrast, Defendant argues that it is entitled to summary judgment because, under the Policy, Paragraphs B.1.g.(3) and B.1.g.(5) unambiguously preclude coverage and neither

7

provision conflicts with or contradicts the exception affording coverage under Paragraph G.2.c.(2). Defendant argues further that Paragraph G.2.c.(2) does not provide coverage for Plaintiff's claim, because the Paragraph G.2.c.(2) Exception to the Water Exclusion only applies to "surface water" or "water under the surface of the ground," not water or waterborne material overflowing or discharged from a "drain" or "sewer."

First, the Water Exclusion unambiguously excludes coverage for the damage to the Property. Paragraphs B.1.g.(3) and (5) of the Water Exclusion state, in relevant part, that Defendants "will not pay for loss or damage caused directly or indirectly" by "[w]ater" or "[w]aterborne material" that "backs up or overflows or is otherwise discharged from a sewer [or] drain[,]" "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." (DE 34-1 at 85.) The Policy defines "sewer" as "any underground pipe . . . for carrying water, wastewater or sewage on or away from the premises . . . ." (DE 34-1 at 98.) The Policy defines "drain" as "any pipe . . . carrying water, wastewater or sewage on or away from the premises . . . to a sewer." (*Id.*) In the present situation, it is undisputed that the damage to the Property was caused when water or waterborne material overflowed or was otherwise discharged from toilets — defined under the Policy as a "drain" — located on the first floor of the Property. Thus, the plain meaning of the language in Paragraphs B.1.g.(3) and (5) of the Water Exclusion clearly excludes insurance coverage in the present situation.

Notwithstanding the above, Plaintiff contends that it is entitled to coverage under Paragraph G.2.c(2). Paragraph G.2.c(2) provides an exception to specific provisions of the Water Exclusion and states, in relevant part, that "[a]ccidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe caused by wear and tear, when the pipe is located off the described premises . . . ." (DE 34-1 at

8

94.)  However, Plaintiff's reliance on Paragraph G.2.c(2) is misplaced for two reasons.  First, Paragraph G.2.c clearly states that "water damage" under this paragraph "does not include loss or damage otherwise excluded under the terms of the Water Exclusion."  (DE 34-1 at 94.)  Second, Paragraph G.2.c also states that "to the extent that accidental discharge or leakage of water falls within the criteria set forth in [Paragraphs G.2.c.(1) or G.2.c.(2)] of this definition of 'specified causes of loss,' such water is not subject to the provisions of the Water Exclusion which precludes coverage for **surface water** or **water under the surface of the ground**."  (DE 34-1 at 94 (emphasis added).)  In other words, Paragraph G.2.c.(2) provides an exception to only those provisions of the Water Exclusion that involve surface water or water under the surface of the ground.  Paragraph G.2.c.(2) does not modify or otherwise impact any provisions of the Water Exclusion that involve water or waterborne material that overflows or is otherwise discharged from a "drain."  *See Raffell v. Scottsdale Ins. Co.*, No. 20-21719-CIV-ALTONAGA, 2021 U.S. Dist. LEXIS 4843, at *17 (S.D. Fla. Jan. 8, 2021) (interpreting the same language to mean that "the Water Exclusion's provisions that preclude coverage for either surface water [Paragraph B.1.g.(1)] or water under the surface of the ground [Paragraph B.1.g.(4)] do not apply to 'accidental discharge or leakage of water that falls within the criteria set forth in . . . this definition of specified causes of loss.'") (marks omitted)).  In this situation, the damage to the Property squarely falls within the circumstances described in Paragraphs B.1.g.(3) and (5) of the Water Exclusion.  The Paragraph G.2.c.(2) Exception does not apply to or otherwise modify Paragraphs B.1.g.(3) or (5) of the Water Exclusion.  Therefore, Paragraph G.2.c.(2) does not cover accidental discharge of water or waterborne material otherwise precluded under Paragraphs B.1.g.(3) or (5) of the Water Exclusion.

In summary, the language of the Policy is unambiguous and excludes insurance coverage for Plaintiff's claim. Therefore, summary judgment in favor of Defendant is appropriate. Accordingly, it is

**ORDERED** that:

1. Plaintiff's Motion for Summary Judgment [DE 33] is **DENIED**.

2. Defendant's Motion for Summary Judgment [DE 35] is **GRANTED**.

3. All pending motions not otherwise ruled upon are **DISMISSED as moot**.

4. The Court will enter a separate judgment.

5. The case is **CLOSED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida on this 22nd day of June, 2021.

_____
RODNEY SMITH
UNITED STATES DISTRICT JUDGE

cc:   Counsel of record